[No. A029052. First Dist., Div. One. Feb. 17, 1987.]

In re the Marriage of ALLAGENE and JAMES A. BROWN.
JAMES A. BROWN, Appellant, v.
ALLAGENE BROWN, Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I.

COUNSEL

George W. Luke and Luke & Perry for Appellant.

John K. Van de Kamp, Attorney General, Thomas A. Brady and Gloria F. DeHart, Deputy Attorneys General, for Respondent.

OPINION

**NEWSOM, J.**—Husband and wife were married for approximately twenty-five and one-half years before separating on February 23, 1979. When the parties separated, husband was employed as an architect and civil engineer by the Department of the Army Corps of Engineers at a salary of $36,228 per year; wife worked for the City of Rohnert Park, California, as a senior accountant, earning approximately $17,400 per year.

According to the terms of the dissolution judgment entered on October 22, 1979, husband was ordered to pay wife spousal support of $350 per month "until death of either party, two years after the remarriage of [wife],

or further order of the court, whichever event occurs first." When husband failed to pay spousal support as ordered, the court directed the District Attorney of Sonoma County to "obtain and enforce all orders for support. . . ." Husband was found to be in arrears and a wage assignment was ordered.

Husband first sought modification of the spousal support order in July of 1981, citing as supporting reasons an increase in expenses due to his remarriage and purchase of a new residence following job relocation, and decreased need by wife for support. Husband's request for termination or reduction of spousal support was denied without prejudice to renewal upon a showing of his deteriorating financial condition.

On August 30, 1983, husband again moved for termination of spousal support, alleging a "substantial and material change in . . . circumstances" as follows: his remarriage to a woman who "does not work outside our home;" employment induced relocation to San Bernadino County, California in September of 1980 and purchase of a residence there "with greater mortgage payments at a higher interest rate;" involuntary retirement following extinction of his job in June of 1983, reducing his gross income from $3,750 to $1,525 per month; theft of $52,000 of his personal property and a $25,000 promissory note for which his insurer reimbursed him in an amount less than $5,000; and wife's ability to support herself.

Husband testified that he received a notice from his employer dated June 1, 1983, advising him of the abolition of his employment position and explaining the options available to him. At that time, husband's salary was $45,406 per year, but no positions were available to him in the area either at or within three levels of that pay grade. He was entitled to register for priority placement in another location if a position became available. The alternative was involuntary retirement with income of approximately $1,500 per month.

Husband pondered his options and decided to accept involuntary retirement. He foresaw no positions arising in his area; and in fact, of the employees who registered for priority placement there, none were reemployed. Husband felt that it was financially prudent for him to remain in the San Bernadino County area, where he had purchased a new residence. According to husband, "the real estate market was dead . . . and I felt that all things considered, that I would probably take a substantial loss on my home if I had moved, . . ." Husband applied for several jobs after his retirement without success. He also attempted to operate a consulting business, but had no income from that enterprise.

Husband declared expenses of $2,570 per month and income of $2,500 following his retirement. The mortgage on his home was in the total amount of $40,000, and his monthly payments were $369. At the time of the hearing, husband had just paid nearly $700 for landscaping work on his home. He also customarily made charitable contributions of approximately $200 per month. Husband testified that he devotes 25 hours per week to his "hobby" of designing and constructing homes for those who might not otherwise be able to afford such services. He generally does not receive compensation or realize a profit from these services. Husband testified that he is trying to reduce his expenses.

Wife works, as she did during the marriage, for the City of Rohnert Park as a senior accountant. In addition to her base monthly salary of $2,227,[1] she enjoys full health care and disability benefits. She also maintains a deferred compensation account with her employer in which, at the time of the hearing, she had over $32,000, and which increased by about $1,000 per month: $300 in interest; $467 from her own contribution, of which $159 was mandatory; and an additional $259 contribution from her employer. She has a separate savings account of approximately $20,000, from which she received over $2,250 in interest in 1982. In the past, she has earned up to $1,200 per year preparing income tax returns, although no evidence was offered that she continues to earn this additional income.

Wife declared expenses of $1,594 per month. She lived alone in the family residence in Petaluma, and made mortgage payments of $245 per month. She testified to health concerns due to rheumatoid arthritis and other maladies which made it difficult for her to work. She maximized deferred compensation contributions to provide for her retirement in the event that medical problems force her to leave work. Wife characterized her lifestyle during the marriage as "upper middle class," and better than her current, more frugal standard of living.

I.*

. . . . . . . . . . . . . . . . . .

II.

 Husband's final contention is that wife's representation in these proceedings by the district attorney, without charge to her, is not authorized

---

[1]Representing an increase of aproximately $1,300 from the time of the original spousal support order.

*See footnote, *ante,* page 491.

by law, or that, if it is, such representation was constitutionally impermissible. His argument is that "[i]t is a denial of husband's right to equal protection of law and due process of law that the state should provide wife with the legal resources to resist husband's request to modify his support obligation, unless at the same time the state also provides husband similar legal resources." As an appropriate sanction for the state's alleged misuse of power, husband asks us to award him "all his costs of suit and attorney's fees to be paid by the State or the County."

The district attorney interceded in this case pursuant to Civil Code section 4801.7, which in subdivisions (a) and (b) provides: "(a) In any proceeding where a court makes or has made an order requiring payment of spousal support, the court may direct that payment shall be made to the county officer designated by the court for the purpose. The court may include in any such order any service charge imposed under the authority of Section 279 of the Welfare and Institutions Code. [¶] (b) In any proceeding where the court has entered an order pursuant to subdivision (a) the court may also refer the matter of enforcement of the spousal support order to the district attorney. The district attorney may bring such enforcement proceedings as he or she in his or her discretion deems appropriate. Nothing in this section shall be construed to prohibit the district attorney from bringing an action or from initiating process to enforce or to punish the failure to obey an order for spousal support under any provision of law which empowers the district attorney to bring such an action or initiate such a process, whether or not there has been a referral by the court pursuant to this section."

Prior to husband's motion for modification of the spousal support order, he was in arrears in his support payments. The district attorney acted on wife's behalf and pursuant to court order to collect past due spousal support, and husband does not challenge the district attorney's participation in enforcement proceedings under Civil Code section 4801.7. He argues, however, that the statute does not authorize representation of spouses by the district attorney in modification proceedings which do not involve enforcement.

■ Our high court has held that the district attorney may not prosecute civil actions in the absence of specific legislative authorization. (*People* v. *McKale* (1979) 25 Cal.3d 626, 632 [159 Cal.Rptr. 811, 602 P.2d 731]; *Safer* v. *Superior Court* (1975) 15 Cal.3d 230, 236 [124 Cal.Rptr. 174, 540 P.2d 14].) We therefore must determine whether Civil Code section 4801.7 embraces modification proceedings within the authorized proceeding to enforce or collect spousal support.

■ As we construe the statute, the manifest intent of Civil Code section 4801.7 is to provide for the district attorney's representation of a spouse enti-

tled to support where payments have not been made and enforcement proceedings are necessary. Obviously, both the state and counties have an interest in protecting the right of spouses to receive court ordered support payments, and in avoiding the burden of public support resulting from nonenforcement. But by its terms, Civil Code section 4801.7 restricts the district attorney's participation to "the matter of *enforcement* of the spousal support order . . . ." (Italics added.) It specifies that "[t]he district attorney may *bring such enforcement proceedings* as he or she in his or her discretion deems appropriate." ▮ (Italics added.) Manifestly, the action here is not one for enforcement, and, indeed, it was instituted by husband, not the district attorney. Legitimate though the district attorney's interests in insuring payment and collection of court ordered spousal support undoubtedly are, we think the appropriate *amount* of such support is no part of its concern.

The Attorney General suggests that "the authority to enforce an order becomes meaningless if the district attorney cannot defend an order which is being enforced by that office against a motion to terminate or reduce [support payments] below the amount necessary for the support of the recipient spouse." The argument is unconvincing, if only because it ignores the ability of the recipient spouse to defend or prosecute modification proceedings. And the argument that the recipient spouse may lack sufficient resources to defend a motion for reduction of spousal support without public assistance through Civil Code section 4801.7 is undercut by the rule that a party demonstrating financial need may recover attorney's fees in a proceeding to modify spousal support. (Civ. Code., § 4370; *In re Marriage of Mulhern* (1973) 29 Cal.App.3d 988, 993 [106 Cal.Rptr. 78].) Finally, it seems clear to us that the Legislature could, but has deliberately declined to, extend the district attorney's participation into modification proceedings.

Having decided that Civil Code section 4801.7 does not empower the district attorney to defend recipient spouses in an action for reduction or termination of spousal support,[2] we turn to the question of what remedy is appropriate in the case at bench. Husband has demonstrated no prejudice flowing from the district attorney's conduct.[3] Had wife retained private counsel to resist the motion, husband would still have incurred attorney's fees and costs in this action. He suffered no discernible damages from wife's representation by the district attorney. Nor would an award of attorney's fees to husband, as he claims, serve to deter future public enforcement in modifi-

---

[2]We of course express no opinion on the authority of the district attorney to represent a spouse in an action for *child* support.

[3]Since we reverse on other grounds, the issue has become moot but we express our views on Civil Code section 4801.7 as an issue of public interest likely to recur. (*Liberty Mut. Ins. Co.* v. *Fales* (1973) 8 Cal.3d 712, 716. [106 Cal.Rptr. 21, 505 P.2d 213].)

cation motions; until now Civil Code section 4801.7 had not been limited to preclude representation by the district attorney in such proceedings. We have no reason to believe that, notwithstanding the finality of our opinion, the district attorney will continue to provide such representation as in good faith it provided here. No reason, therefore, justifies imposition of attorney's fees against the state and county as a sanction against future violation of the statute.

The judgment is reversed and the spousal support award is terminated. Costs on appeal are awarded to husband, but no award of attorney's fees is made.

Elkington, Acting P. J., and Holmdahl, J., concurred.

A petition for a rehearing was denied March 18, 1987, and the opinion was modified to read as printed above.