[No. C001897. Third Dist. Feb. 10, 1988.]

In re the Marriage of CAROL LYNN and WALTER RONALD BAILEY.
WALTER RONALD BAILEY, Appellant, v.
CAROL LYNN BAILEY, Respondent.

**COUNSEL**

John Phillips, District Attorney, and Donald H. Cully, Deputy District Attorney, for Appellant.

John Kappos for Respondent.

OPINION

MARLER, J.—Walter Ronald Bailey (father) appeals from an order requiring Carol Lynn Bailey (mother) to pay one-half of the minor's dental expenses but otherwise denying father's request for child support. Father contends that under the circumstances of this case the trial court had no discretion to refuse to award child support pursuant to the Agnos Child Support Standards Act of 1984.[1] We agree and shall reverse the order.

### FACTS AND PROCEDURAL HISTORY

Todd William Bailey, born July 13, 1970, is the minor child of the parties. On November 22, 1982, the parties entered into a stipulation providing for joint legal custody of Todd, with physical custody in the father. No provision for child support was made.

On October 20, 1986, father filed an order to show cause seeking child support for the minor. Mother filed a responsive declaration requesting that she not be ordered to pay child support.

After hearing, the court ordered existing orders to remain in effect, and ordered mother to pay one-half of the minor's dental expenses not covered by insurance, to a maximum of $50 per month. From this order, father appeals.

### DISCUSSION

■ Father contends the trial court had no discretion under the Agnos Act to refuse to order wife to pay child support. The stated legislative purpose of the Agnos Act is that "a system of standards and procedures shall be established which provide for a uniform determination of child support awards throughout the state, . . ." (§ 4720, subd. (d).) The formula set out in the Agnos Act requires that a certain minimum award be ordered in recognition of the stated policy that a parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life. (§ 4720, subds. (d) and (e).) The Agnos Act also takes into consideration the financial abilities of each parent to provide support in excess of the mandatory minimum level of support. (*Ibid.*) "[T]he Legislature recognizes that a parent's circumstances and station in life are dependent upon a variety of factors, including his or her earned and unearned income; earning capacity; assets; and the income of his or her

---

[1] Hereinafter the Agnos Act (Civ. Code, div. 4, pt. 5, tit. 5, ch. 2, § 4720 et seq.). All further references are to the Civil Code unless otherwise noted.

subsequent spouse or nonmarital partner, to the extent that the obligated parent's basic living expenses are met by the spouse or other person, thus increasing the parent's disposable income and therefore his or her ability to pay more than the mandatory minimum child support award established by this chapter. The court shall take into consideration the needs of the supported child or children in determining whether circumstances give rise to an increase or decrease in a child support award." (§ 4720, subd. (e).)

In determining the mandatory minimum award, the court looks first to the standard established under the aid to families with dependent children program (AFDC) for the minimum family support level based on the number of eligible needy persons in the family. (§ 4720, subd. (d).) Prior to the computation of each parent's support liability, the AFDC standard is compared to a percentage of the net disposable income of both parents. (§§ 4722, subds. (b)(1) & (2), 4725.)

The amount each parent is required to contribute to the mandatory minimum award is determined by multiplying the minimum award by the proportionate share of each parent's contribution to their combined net disposable income. (§ 4722, subd. (d).)[2]

Consistent with the idea that child support awards be based on a parent's financial ability to pay, section 4725 provides for additional income deductions, upon the request of a party, separate from the standard deductions, to account for times when a parent suffers "extreme financial hardship." Neither party in this case requested additional deductions. While section 4725 requires the court to remember the underlying goals of the Agnos Act, it

---

[2] The formula is represented algebraically as follows:

WHERE:

| | | |
|---|---|---|
| MB | $=$ | minimum base |
| P | $=$ | percent $= \dfrac{NCN}{NCN + CN}$ |
| NCN | $=$ | noncustodial spouse net income |
| CN | $=$ | custodial spouse net income |
| F | $=$ | factor (.18 for one child, .27 for two, .36 for three, and .04 for each additional child over three children) |
| S | $=$ | the AFDC needs standard for the appropriate number of children to be supported by this order |
| Y | $=$ | yield |

Then calculation of the minimum support is as follows:

| | | | |
|---|---|---|---|
| Step 1: | $F \times (CN + NCN)$ | $=$ | Y |
| Step 2: | If $Y \geq S$, MB | $=$ | S |
| | If $Y < S$, MB | $=$ | Y |
| Step 3: | $MB \times P$ | $=$ | portion of award to be paid by noncustodial spouse. (§ 4722, subd. (g).) |

also provides that a court shall not order a child support award that would have the effect of reducing a parent's net income to an amount less than that established as the minimum necessary for a person under the AFDC Program. (§ 4725, subd. (e).) Such effect is not apparent here, nor is it claimed.

In this case father submitted an income and expense declaration showing his gross monthly income to be $2,603.04 with a net monthly disposable income of $1,986.39. Mother submitted an income and expense declaration showing her gross monthly income to be $1,119 with a net monthly disposable income of $973.

To apply the mandatory formula we first calculate the required minimum support based upon the declared net incomes of the father and mother as set forth in their respective income and expense declarations. This calculation results in a mandatory minimum award of $303 per month.[3] Mother's share of the mandatory minimum award is then calculated to be $99.69 per month.[4]

█ Mother argues that the court's order is justified by a consideration of father's income and that of his current spouse. Mother asserts that if the court had considered only those two figures it could have set the support requirements of father at more than the mandatory minimum and not required any contribution from her. Mother misreads the statutory authority for considering a spouse's income in arriving at this proposition.

Section 4720, subdivision (e), states the policy of allowing consideration of the income of a spouse or nonmarital partner "to the extent that the *obligated* parent's basic living expenses are met by the spouse or other person, thus increasing the parent's disposable income and therefore his or her ability to pay *more* than the mandatory minimum child support award . . . ." (Italics added; see *In re Marriage of Nolte* (1987) 191 Cal.App.3d 966, 974 [236 Cal.Rptr. 706].) The "obligated" parent referred to in that section is the noncustodial parent from whom support is sought. Applica-

---

[3] At the time of the application for support under consideration, the minimum family support level for one person was $303. (See Welf. & Inst. Code, §§ 11452 and 11453 and State Department of Social Services Manual of Policies and Procedures, § 44-207.112.) The calculation of the mandatory minimum award is then as follows:

Step 1:  $F \times (CN + NCN) = Y$
.18 (one child) × ($1986 + $973) = $532.69 (yield)
Step 2:  Here Y is $532.69 and S is $303. So MB = $303.

[4] To determine mother's share:
MB × P = portion of award to be paid by mother.
$303 × $\frac{\$973}{\$2959}$ = $99.69 (mother's portion)

tion of that policy here authorizes the court to consider whether mother's basic living expenses are being met by a spouse or nonmarital partner in setting support at more than the minimum level. It does not authorize the court to consider father's spouse's income and thereby relieve mother of the duty to support her child.

Further, the trial court is specifically prohibited from including the income of a current spouse in determining annual gross income for purposes of calculating the mandatory minimum award. Section 4721 provides: "In determining the ability of parents to pay the mandatory minimum child support award and to calculate the actual monthly payments to be made by each parent, all of the following provisions apply: . . . [¶] (e) For the purpose of determining the parent's annual gross income, in calculating the mandatory minimum child support award, the court shall not include any portion of the earned income and income derived from the separate property of the current spouse or the nonmarital partner of either parent. This requirement does not apply to a child support obligation arising from the marriage between the obligated parents."

■ Our holding should not be construed to mean the Agnos Act mandates a minimum sum of child support payable directly to the custodial parent. We find nothing in the act that would so require. It would not be an abuse of discretion in and of itself if the trial court orders a portion of the child support be payable directly to the dentist for dental care of the child, so long as this sum be considered as a credit, for amounts actually paid, toward the child support ordered in accordance with this decision.

Finally, mother contends father's representation by the District Attorney of San Joaquin County is improper. Mother relies on *In re Marriage of Brown* (1987) 189 Cal.App.3d 491 [234 Cal.Rptr. 535] in which the court held that the district attorney was not authorized to represent spouses in proceedings to modify spousal support which do not involve enforcement. (*Id.,* at p. 496.) The court, however, expressed no opinion on the authority of the district attorney to represent a spouse in an action for *child* support. (See *Marriage of Brown, supra,* (mod.) 189 Cal.App.3d 1653b.) Mother cites no other authority for this proposition, and we will not undertake a review of the matter on our own.[5] In any event, whether or not the representation is proper is irrelevant to the substantive issue of the case.

[5] At oral argument counsel for father stated he relied on Civil Code section 4801.7 and Welfare and Institutions Code section 11475 (more properly section 11475.1) for the authority to represent father in this action. Since the issue does not relate to the disposition of the case, any discussion is not a part of the holding of the case and appears in the concurring opinions.

The judgment is reversed and remanded. The trial court is directed to vacate the existing order re dental expenses and reconsider the order to show cause of father in a manner consistent with this opinion.

Evans, Acting P. J., concurred.

**EVANS, Acting P. J.**—Although I concur in the judgment (order), I write separately on the topic of husband's representation by the district attorney.

In the underlying proceeding seeking to modify a dissolution decree and order to invoke the provisions of the "Agnos Child Support Standards Act of 1984" (Civ. Code, § 4720 et seq.), appellant husband is represented by the office of the District Attorney of San Joaquin County. The reason or justification for such representation escapes my scrutiny. Husband's declaration reveals his gross income to be $2,603.04 per month, exclusive of any sums earned by his present wife who is employed in the office of the District Attorney of San Joaquin County. Their joint income is purported to be in excess of $4,100 per month.

The mother of the child, respondent herein, reveals a gross total income of $1,119 per month and is privately represented in this proceeding. Upon questioning at oral argument the deputy district attorney, when asked for justification for his representation of the appellant husband, referred to Welfare and Institutions Code section 11475 (more reasonably the section should have been 11475.1) and Civil Code section 4801.7. His reliance on either of those sections is totally misplaced.

Welfare and Institutions Code section 11475.1, subdivision (a), provides in pertinent part, "Each county shall maintain a single organizational unit located in the office of the district attorney which shall have the responsibility for promptly and effectively *enforcing child and spousal support obligations . . . . The district attorney shall take appropriate action,* both civil and criminal, to *enforce this obligation* when the child is receiving *public assistance,* and when requested to do so by the individual on whose behalf the *enforcement efforts* will be made when the child is not receiving public assistance. . . . In any action brought or enforcement proceedings instituted by the district attorney pursuant to this section for payment of child or spousal support, an action to recover an arrearage in support payments may be maintained by the district attorney . . . . [¶] In any action for child support brought by the district attorney in the performance of duties *under this section,* the district attorney may make a motion for an order effective during the pendency of that action, for the support, maintenance, and education of the child or children that are the subject of the action. *This order shall be referred to as an order for temporary support.*" (Italics added.)

When read in its entirety, Welfare and Institutions Code section 11475.1 renders counsel's reliance and explanation ludicrous. The section contemplates the implication of the district attorney's services in cases of need or when aid to families with dependent children (AFDC) is involved. In fact, the section specifically directs that the district attorney institute the action. That is not the case in this proceeding; the husband instituted the action upon the representation of the district attorney. The district attorney services are available to establish paternity and enforce prior orders or secure a temporary order in the first instance when prior proceedings relative to the spouses or child and parents have not been undertaken. It is patently clear the underlying proceeding is not one without prior court action. In 1982, a dissolution decree was entered providing for joint legal custody of the child with both parents and physical custody with the father. By stipulation of the parties, an order compelling the mother to contribute to the child's support was not entered at that time. Four years later, husband with the assistance of the district attorney caused an order to show cause to be filed seeking modification of the decree pursuant to the provisions of Civil Code section 4720 et seq.

The district attorney as counsel for appellant husband also suggested, as a basis of authority for his representation, the provisions of Civil Code section 4801.7. Again, he has totally misread or ignored the clear meaning of the statute and the intent of the Legislature relative to that section as well as the prior section.

I assume the District Attorney of San Joaquin County has recognized that the California Supreme Court has previously stated that district attorneys are not to prosecute civil actions in the absence of specific legislative authority. (See *People* v. *McKale* (1979) 25 Cal.3d 626, 632 [159 Cal.Rptr. 811, 602 P.2d 731]; *Safer* v. *Superior Court* (1975) 15 Cal.3d 230, 236 [124 Cal.Rptr. 174, 540 P.2d 14].)

In this case, counsel has proceeded into what he alleges to have been a perceived authority of either Welfare and Institutions Code section 11475.1 or Civil Code section 4801.7. Only a strained construction of either section would authorize the actions here taken. Moreover, under the factual background relative to all of the parties involved, either directly or indirectly, it is difficult to ascribe the proper motives of the activities undertaken by the district attorney's office. Civil Code section 4801.7 authorizes district attorney services in the representation of a parent entitled to support when payments have not been made and enforcement proceedings are needed. That need relates to the assistance of the district attorney to avoid institution of public support resulting from nonenforcement of the prior support orders. The clear language of that section limits the district attorney's

involvement to "the matter of enforcement of the spousal support order" (*ibid.*). Clearly the instant action is not one for enforcement nor was it for the procuring of a temporary order in the absence of any prior order or proceeding for support; nor was public support of the child imminent or remotely implicated. The obvious legislative intent as expressed in Welfare and Institutions Code section 11475.1 and Civil Code section 4801.7 is to provide publicly funded legal assistance through the district attorney's office in instances where it is necessary to incur payment and collection of court-ordered support in those cases in which AFDC is involved or that such enforcement is needed to preclude the possibility that public support would be needed unless such action is undertaken.

In this instance, neither scenario was present. Had the respondent mother had custody and a support order was absent, her level of income may have been sufficiently minimal to require such public services.

It is also important to note that in this instance, the action was not instituted by the district attorney as required in Welfare and Institutions Code section 11475.1, but rather by the husband, seeking in effect to modify the dissolution decree with the assistance of publicly funded counsel. (See *In re Marriage of Brown* (1987) 189 Cal.App.3d 491, 496 [234 Cal.Rptr. 535].)

Under the circumstances, I would in affirming the judgment (order) also remand the matter to the trial court for a determination of the value of the services rendered by the district attorney's office on behalf of appellant husband, both in the trial court and on appeal, and direct that an order be entered requiring husband to repay the amount determined to be reasonable attorney fees to the proper county fund. (See *Stanson* v. *Mott* (1976) 17 Cal.3d 206 [130 Cal.Rptr. 697, 551 P.2d 1]; *Stevens* v. *Geduldig* (1986) 42 Cal.3d 24, 35 [227 Cal.Rptr. 405, 719 P.2d 1001].)

SIMS, J.—I concur in the result reached in the lead opinion and in its reasoning except for one point of law that is unnecessary to the result obtained. I also disagree with the concurring opinion, which also discusses a point of law that is unnecessary to the result. I write separately out of concern that these points of law, which could easily be omitted from the opinion, are wrongly decided and will cause unnecessary confusion in the adjudication of child support cases in the trial courts. Moreover, a rejoinder to the concurring opinion is necessary because it erroneously suggests the district attorney has violated the law.

My difference with the lead opinion is in its assertion, made without analysis, that "The 'obligated' parent referred to in [subdivision (e) of Civil

Code section 4720] is the noncustodial parent from whom support is sought." (Maj. opn., p. 509.) (All further statutory references are to the Civil Code unless otherwise noted.) I think the "obligated parent" is any parent with a legal obligation to support the child, regardless of whether the parent has physical custody.

Subdivision (e) of section 4720 is set out in the margin.[1] Read in its entirety, the subdivision makes clear that an "obligated parent" is any parent with a legal obligation to support the child and does not depend on physical custody. Thus, the statute says, "A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life." Clearly this language does not single out the noncustodial parent as the only parent obligated to support the parents' child. Rather, each parent is so obligated.

At one point, subdivision (e) of section 4720 facially suggests it is referring only to the noncustodial parent because it says the income of a parent's subsequent spouse or nonmarital partner can be considered for ascertaining the parent's disposable income "and therefore his or her ability to *pay* more than the mandatory minimum child support award established by this chapter." (Italics added.) Ordinarily, custodial parents do not "pay" child support to themselves. Consequently, this reference, read in isolation, suggests the statute refers only to the noncustodial parent.

However, we have an obligation to construe the term "pay" in the context of the entire statutory scheme of which it is a part. (See *People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154].) Section 4722 (pertinent portions of which are set out in the margin)[2] makes

---

[1] Section 4720, subdivision (e) states: "It is the intention of the Legislature that the courts shall adhere to the principles set forth in this chapter and shall depart from them only in exceptional circumstances. A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life. In this regard, the Legislature recognizes that a parent's circumstances and station in life are dependent upon a variety of factors, including his or her earned and unearned income; earning capacity; assets; and the income of his or her subsequent spouse or nonmarital partner, to the extent that the obligated parent's basic living expenses are met by the spouse or other person, thus increasing the parent's disposable income and therefore his or her ability to pay more than the mandatory minimum child support award established by this chapter. The court shall take into consideration the needs of the supported child or children in determining whether circumstances give rise to an increase or decrease in a child support award."

[2] Section 4722 states in pertinent part: "(a) The standard established pursuant to Section 11452 of the Welfare and Institutions Code, as adjusted by Section 11453 of the Welfare and Institutions Code, establishes a minimum family support level based on the number of eligible needy persons in the family.

"(b) *Each parent's ability to pay a minimum mandatory amount of child support,* whether for a temporary or a permanent order, shall be determined in accord with the standards established by Section 11452 of the Welfare and Institutions Code, and prior to the computa-

clear that the Agnos Act does not use the term "pay" in the literal sense of having money change hands. Rather, section 4722 sets forth methods by which, "Each parent's ability to *pay* a minimum mandatory amount of child support, . . ." is ascertained. Under section 4722, the ability of both the custodial and noncustodial parent to "pay" child support is calculated. "Pay" means "contribute to." Subdivision (e) of section 4720 says the income of either parent's subsequent spouse or nonmarital partner may be considered in determining that parent's disposal income and therefore his or her ability to contribute to more than the mandatory minimum child support award.[3] The income of the subsequent spouse of the custodial parent can therefore be considered for the purpose set forth in the statute.

In my view, this construction of the statutory language is the only one that satisfies our obligation to construe the statute to achieve a reasonable result and avoid absurdity. (See *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1392 [241 Cal.Rptr. 67, 743 P.2d 1323].) Subdivision (e) of section 4720 is the only portion of the Agnos Act expressly authorizing a trial court to consider the earning capacity of a subsequent spouse in the computation of child support. Even putting aside constitutional equal protection concerns, why would the Legislature intend that only the income of the noncustodial subsequent spouse be considered in setting child support? Does this mean that if the custodial parent remarries a billionaire who lavishes untold wealth upon the parent and pays all the parent's basic living expenses, the court cannot consider this fortuity of riches in determining the appropriate amount of child support, above the statutory minimum, to be contributed by each parent? Why would the Legislature wish such a state of affairs?

Even though subdivision (e) of section 4720 authorizes the trial court to consider the income of the subsequent spouse of a custodial parent, used to pay the parent's basic living expenses, mother still loses in this case. As the lead opinion points out, both subdivision (e) of section 4720 and subdivision (e) of section 4721 authorize the court to consider such income only for the

---

tion of the spousal support liability, as follows: [¶] (1) The combined monthly net disposable income of both parents shall be multiplied by the following percentage factors: 18 percent for one child; 27 percent for two children; 36 percent for three children; 40 percent for four children; and an additional four percent for each child thereafter, up to a total of 10 children.

"(2) If the resulting amount is less than the AFDC standard for the number of children involved, the court shall find that *the parents are unable to pay* at the level of the children's portion of the AFDC standard and shall set a minimum award according to the actual combined net income and the percentages set forth above.

"(3) If the resulting amount is at, or greater than, the AFDC standard for the same number of children, the court shall order a minimum award that equals the AFDC standard." (Italics added.)

[3] Under subdivision (d) of section 4722 both the custodial and noncustodial parents are ordered to contribute a proportionate share of the award.

purpose of setting a child support award above the statutory minimum. Mother's obligation here is to pay the statutory minimum award, the calculation of which is made without regard to the income of father's new wife.

The concurring opinion wrongly lambastes the district attorney for representing father. Welfare and Institutions Code section 11475.1 plainly authorizes the representation and may require it.[4] (Further references to section 11475.1 are to this statute.)

The concurring opinion argues section 11475.1 "contemplates the implication of the district attorney's services in cases of need or when [AFDC] is involved." (Conc. opn., p. 512.) However, it is clear that receipt of AFDC is not a precondition for the district attorney's enforcement services. The statute expressly provides to the contrary. The statute gives the district attorney "responsibility for promptly and effectively enforcing child and

---

[4] Welfare and Institutions Code section 11475.1 provides in pertinent part: "(a) Each county shall maintain a single organizational unit located in the office of the district attorney which shall have the responsibility for promptly and effectively enforcing child and spousal support obligations and determining paternity in the case of a child born out of wedlock. The district attorney shall take appropriate action, both civil and criminal, to enforce this obligation when the child is receiving public assistance, and when requested to do so by the individual on whose behalf the enforcement efforts will be made when the child is not receiving public assistance. To the extent required by federal law, actions brought by the district attorney to establish or enforce support obligations in all cases, other than paternity cases or those cases involving complex issues, shall be completed within the following time limits: (1) 90 percent of the actions shall be completed within three months from the date of service; (2) 98 percent of the actions shall be completed within six months from the date of service; and (3) 100 percent of the actions shall be completed within 12 months from the date of service. As used in this section, 'service' means the service of process required by law for the particular proceeding. This responsibility applies to spousal support only where the spousal support obligation has been reduced to an order of a court of competent jurisdiction. In any action brought for modification or revocation of an order that is being enforced under Title IV-D of the Social Security Act, the effective date of the modification or revocation shall be as prescribed by federal law (42 U.S.C. Sec. 666(a)(9)), or any subsequent date. In any action brought or enforcement proceedings instituted by the district attorney pursuant to this section for payment of child or spousal support, an action to recover an arrearage in support payments may be maintained by the district attorney at any time within the period otherwise specified for the enforcement of a support judgment, notwithstanding the fact that the child has attained the age of majority. The county shall undertake an outreach program to inform the public that this service is available to persons not receiving public assistance. There shall be prominently displayed in every public area of every office of the units established by this section a notice, in clear and simple language prescribed by the Director of Social Services, that child and spousal support enforcement services are provided to all individuals whether or not they are recipients of public social services.

"In any action for child support brought by the district attorney in the performance of duties under this section, the district attorney may make a motion for an order effective during the pendency of that action, for the support, maintenance, and education of the child or children that are the subject of the action. This order shall be referred to as an order for temporary support. This order shall have the same force and effect as a like or similar order under the Family Law Act (Part 5 (commencing with Section 4000) of Division 4 of the Civil Code)."

spousal support obligations . . . ." (§ 11475.1, subd. (a).) This responsibility exists when the child is receiving public assistance, and *"when requested to do so by the individual on whose behalf the enforcement efforts will be made when the child is not receiving public assistance."* (*Ibid,* italics added.) The statute expressly commands the county to undertake an outreach program to inform the public that the district attorney's enforcement service is available to persons not receiving public assistance. (*Ibid.*) The county must post notices informing the public "that child and spousal support enforcement services are provided to all individuals whether or not they are recipients of public social services." (*Ibid.*)

Nor does section 11475.1 condition the district attorney's services on a showing of financial hardship or "need." The statute says the district attorney "shall" take appropriate action in non-AFDC cases when requested to do so by the individual on whose behalf enforcement will be sought. (See fn. 4, *ante.*) I need not reach the question whether this language mandates representation upon request in all non-AFDC cases or whether the statute preserves a traditional measure of "prosecutorial" discretion. For present purposes, it is sufficient to note that a showing of "need" is not a statutory prerequisite to the district attorney's furnishing services.

The concurring opinion also argues that the district attorney's services are available "to establish paternity and enforce prior orders or secure a temporary order in the first instance when prior proceedings relative to the spouses or child and parents have not been undertaken." (Conc. opn., p. 512.) While this is true, the statute contains no language of limitation precluding the district attorney from obtaining a child support order where, as here, a prior order has been entered in an action for dissolution of marriage but the order wrongfully fails to provide for payment of child support by the noncustodial parent. Section 11475.1 empowers the district attorney "to establish or enforce support obligations." (See fn. 4, *ante.*) The statute commands the district attorney to "take appropriate action." (*Ibid.*) Surely this includes obtaining a child support order in an existing action. The only limitation on the method of enforcement I can find in the statute is: "This responsibility [for enforcement of support obligations] applies *to spousal support* only where the spousal support obligation has been reduced to an order of a court of competent jurisdiction." (§ 11475.1, subd. (a), italics added.) The statute thus envisions that the district attorney should enforce *spousal* support only where the spouse has first obtained an order. By its omission of any reference to *child* support in this sentence, the statute contemplates that the district attorney may obtain original *child* support orders, since the expression of certain things in a statute necessarily involves

exclusion of other things not expressed.[5] (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra,* 43 Cal.3d at p. 1391, fn. 13.) Although subdivision (a) of section 11475.1 allows a district attorney to obtain an order for temporary child support, the applicable language is language of authorization, not limitation. Nothing in the statute says the district attorney may obtain original orders only if they are temporary orders.

Assume, for example, father and mother dissolve their marriage and mother gets physical custody of child. At the time of dissolution, father is disabled and unable to contribute to child support. The judgment dissolving the marriage so provides. Five years later, mother learns father has recovered from his disability, is employed, and is able to pay child support. Mother is employed as a sales clerk and is not receiving public assistance. Upon mother's request, can the district attorney represent her in an attempt to get child support from father? In my view, under section 11475.1 the answer is "yes."

The district attorney did not act unlawfully in representing the father in this case.

---

[5] Known to those at Yale Law School as the doctrine, "*Expressio unius est exclusio alterius.*"