[No. A043619. First Dist., Div. One. May 24, 1991.]

In re the Marriage of ROBERT E. and BARBARA A. DADE.
ROBERT E. DADE, JR., Respondent, v.
BARBARA A. DADE SCIUTTO, Appellant.

622

## COUNSEL

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Josanna Berkow, Deputy Attorneys General, for Appellant.

Thiessen, Gagen & McCoy, Gagen, McCoy, McMahon & Armstrong and Brian D. Thiessen for Respondent.

## OPINION

**DOSSEE, J.**—Respondent moved to recuse the district attorney from representing appellant in child support modification proceedings. The trial court granted respondent's motion, found parts of The Agnos Child Support Standards Act of 1984 unconstitutional, and directed the district attorney's office to pay respondent's attorney's fees incurred to bring the recusal motion.

The orders of the trial court are reversed.

### Facts and Procedural History

The marriage of respondent Robert E. Dade, Jr., and appellant Barbara A. Dade Sciutto was dissolved in 1978. At that time, they entered into a marital settlement agreement which provided that appellant would have custody of the couple's two children, Robert (born August 19, 1970) and Bryanne Elizabeth (born June 11, 1974), and that respondent would pay $200 per month per child for their support.

On August 20, 1987, appellant asked the Contra Costa County District Attorney to assist her in obtaining modification of the child support payments. In a letter to the district attorney, she stated respondent had voluntarily increased his monthly payment to $300 per month per child in 1984, but she claimed that amount was no longer adequate to meet the children's needs.

Before the district attorney took any action, respondent, citing severe financial problems, filed a motion to reduce the amount of child support. He filed an income and expense statement in connection with his motion which showed he had suffered business losses of $192,000 over the previous 12 months and that he had total monthly expenses of $8,225. In addition, he reported that his current wife had incurred uninsured medical expenses of $7,000 over the preceding 12 months and that he was 4 months in arrears on his home mortgage payments.

The district attorney assumed the representation of appellant, who filed an income and expense statement which showed she was unemployed, but that her current husband's net monthly income was $8,300.

Respondent moved to recuse the district attorney and for attorney's fees pursuant to the private attorney general doctrine (Code Civ. Proc., § 1021.5). In connection with his motion, respondent argued certain Civil Code sections were unconstitutional because they allowed the court to consider the income

of the noncustodial parent's current spouse, but not the income of the custodial parent's current spouse for purposes of calculating child support awards.

In an order filed August 12, 1988, the trial court ordered the recusal of the district attorney and granted respondent's request for attorney's fees incurred in connection with the recusal motion. The court also found Civil Code sections 4720, subdivision (e) and 4721, subdivision (e) unconstitutional. In an order filed December 20, 1988, the court directed the district attorney to pay respondent's attorneys $11,922 for attorney's fees and $1,744.58 for costs.

Appellant filed both a notice of appeal from the August 1988 order and thereafter a notice of abandonment of her appeal. The district attorney filed a notice of appeal from the December 1988 order and moved to vacate appellant's abandonment of her appeal on the grounds that the abandonment was prejudicial to the rights, including an independent right to pursue the appeal, of the district attorney. The trial court granted the motion to vacate the abandonment of the appeal.[1]

*Discussion*

I. *Abandonment of Appeal*

 Respondent contends the trial court should not have granted the district attorney's motion to vacate the abandonment of the appeal from the August 12, 1988 order, and therefore, this court should not consider the issues resolved by that order (the recusal of the district attorney, the constitutionality of certain statutes, and the award of attorney's fees against the district attorney's office).[2]

A written abandonment of an appeal filed before the filing of the record in the appellate court operates to dismiss the action and to restore the jurisdiction of the superior court. (Cal. Rules of Court, rule 19(a).)[3] The

---

[1]Although the appellant in this case is nominally Barbara Dade Sciutto, we recognize that the party pursuing this appeal is Contra Costa County.

[2]Because this court felt further briefing was necessary on this issue, supplemental briefing was requested from the parties. In his supplemental brief, respondent raised an issue regarding the disqualification of the trial court judge. This issue was not raised in the parties' original briefs and is not properly before this court.

[3]California Rules of Court, rule 19(a) provides in part: "At any time before the filing of the record in the reviewing court, the appellant may file in the office of the clerk of the superior court a written abandonment of the appeal; or the parties may file in that office a stipulation

trial court may vacate the abandonment of an appeal for good cause and thereby revest jurisdiction in the appellate court. (*Evola* v. *Wendt Construction Co.* (1958) 158 Cal.App.2d 658, 662-663 [323 P.2d 158]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 503, p. 490.)

Here, the trial court granted the district attorney's motion to vacate the abandonment of the appeal based on its conclusion that the December 1988 order which directed the payment of attorney's fee constituted a final judgment, and that the appeal from the August 1988 order was premature. The trial court found the district attorney had filed a timely appeal from the December order, and that the district attorney's office was "aggrieved" by the decision of the court that certain statutes were unconstitutional and by the award of attorney's fees. Finally, the court noted that the district attorney had no way of anticipating that appellant would abandon her appeal and that "[t]he People's interest in the outcome of the appeal is manifest."

The Attorney General, representing appellant in this appeal, argues that the trial court properly vacated appellant's abandonment of her appeal because Contra Costa County had an independent right to appeal. The Attorney General contends that the court's orders undermine the district attorney's authority to pursue child support modification actions (cf. Pen. Code, § 1424),[4] that adjudicating two generally applicable child support statutes unconstitutional significantly affects the district attorney's litigation of these cases, and, of course, that the award of attorney's fees against the district attorney's office impacts the county.

■ "'Any aggrieved party' may appeal from an adverse judgment. (Code Civ. Proc., § 902.) . . . One is considered 'aggrieved' whose rights or interests are injuriously affected by the judgment. [Citations.]" (*County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 736-737 [97 Cal.Rptr. 385, 488 P.2d 953].) A legally aggrieved party who did not participate in the trial court may nevertheless become a party of record and obtain a right to appeal by moving to vacate the judgment, regardless of whether the other parties of record have chosen to appeal. (*Id.* at p. 736; see Code Civ. Proc., § 663.)

The Attorney General presents a persuasive argument that the county has been aggrieved, but until this appeal the county never moved to intervene in

---

for abandonment. The filing of either document shall operate to dismiss the appeal and to restore the jurisdiction of the superior court . . . ."

[4]Penal Code section 1424 provides in part: "An order recusing the district attorney from any proceeding may be appealed by the district attorney or the Attorney General." However, other language in that section provides: "The motion shall not be granted unless it is shown by the evidence that a conflict of interest exists such as would render it unlikely that the defendant would receive a fair trial," which arguably indicates the section may apply only in criminal proceedings.

this case nor to vacate the judgment. Nor did the county attempt to appeal from the August 1988 order.

Further, this court does not agree that the December 1988 order constituted the final judgment in this case. The August 1988 order disposed of all the pending issues. All that was left to be determined was the amount of the costs and attorney's fees to be paid by the county. The district attorney filed the notice of appeal from the August 1988 order on behalf of appellant, noting therein the three issues decided by the trial court. The district attorney then filed the notice of appeal from the December 1988 order on behalf of the district attorney's office, noting therein the single issue of the award of attorney's fees against the district attorney's office.

Notwithstanding the preceding reservations, we believe the trial court did not abuse its discretion when it vacated appellant's abandonment of her appeal. First, as the trial court found, the district attorney could not have anticipated that appellant would abandon her appeal, thus there was no reason for the district attorney to file an appeal on behalf of the county at the time of the August 1988 order. Second, appellant abandoned her appeal because, as she stated, "I have no stake in the legal issues involved in the appeal and because my former husband, Petitioner ROBERT E. DADE, JR. has made it abundantly clear that if the appeal proceeds, he will seek attorney's fees and costs from me pursuant to the provisions of the Family Law Act." Thus, there appears to have been an element of coercion, though lawful, to force appellant to abandon her appeal. Finally, appellate courts have refused to dismiss an appeal when the appeal raises issues of continuing public interest. (See *Lucchesi* v. *City of San Jose* (1980) 104 Cal.App.3d 323, 326, fn. 2 [163 Cal.Rptr. 700]; *Okuda* v. *Superior Court* (1983) 144 Cal.App.3d 135, 137, fn. 1 [192 Cal.Rptr. 388]; 9 Witkin, Cal. Procedure, *op. cit. supra*, Appeal, § 506, pp. 491-493.) The trial court after regaining jurisdiction of the case by reason of rule 19(a) of the California Rules of Court should have similar power to vacate the abandonment of an appeal which raises issues of continuing public interest.

As the trial court concluded, the public's interest in the outcome of this appeal is manifest. " 'It is a well established policy that, since the right of appeal is remedial in character, our law favors hearings on the merits when such can be accomplished without doing violence to applicable rules. Accordingly in doubtful cases the right to appeal should be granted.' [Citations.]" (*Lee* v. *Brown* (1976) 18 Cal.3d 110, 113 [132 Cal.Rptr. 649, 553 P.2d 1121].) We conclude the trial court properly exercised its discretion to vacate appellant's notice of abandonment of her appeal.

## II. *District Attorney Enforcement Services*

■ Appellant argues federal and state law provides for the provision of services by the district attorney in this case notwithstanding the fact the Dade children do not receive public assistance.

This issue was raised and resolved in *Worth* v. *Superior Court* (1989) 207 Cal.App.3d 1150 [255 Cal.Rptr. 304], an opinion issued after the trial court entered its orders in this case. In *Worth*, a father moved to reduce his child support obligation, and the El Dorado County District Attorney represented the mother, the custodial parent, in her opposition to the motion. The Court of Appeal held that Welfare and Institutions Code section 11475.1[5] authorizes the district attorney to oppose a requested modification of a child support order. (207 Cal.App.3d at p. 1155.) The court explained the federal Social Security Act mandates that states which participate in the Aid to Families with Dependent Children program (AFDC) must provide child support enforcement services to all individuals regardless of whether they receive public assistance. (*Id.* at p. 1154.) Section 11475.1 is part of the statutory scheme enacted by the California Legislature to implement the state's participation in the AFDC program. (At p. 1153.)

Section 11475.1, as effective at the time of the proceedings in *Worth* and the proceedings in the trial court here,[6] commands the district attorney "to

---

[5]All further references to section 11475.1 are to Welfare and Institutions Code section 11475.1.

[6]At that time section 11475.1 provided in pertinent part: "(a) Each county shall maintain a single organizational unit located in the office of the district attorney which shall have the responsibility for promptly and effectively enforcing child and spousal support obligations and determining paternity in the case of a child born out of wedlock. The district attorney shall take appropriate action, both civil and criminal, to enforce this obligation when the child is receiving public assistance, and when requested to do so by the individual on whose behalf the enforcement efforts will be made when the child is not receiving public assistance . . . . In any action brought for modification or revocation of an order that is being enforced under Title IV-D of the Social Security Act, the effective date of the modification or revocation shall be as prescribed by federal law (42 U.S.C. Sec. 666 (a)(9)), or any subsequent date. In any action brought or enforcement proceedings instituted by the district attorney pursuant to this section for payment of child or spousal support, an action to recover an arrearage in support payments may be maintained by the district attorney at any time within the period otherwise specified for the enforcement of a support judgment, notwithstanding the fact that the child has attained the age of majority. The county shall undertake an outreach program to inform the public that this service is available to persons not receiving public assistance. There shall be prominently displayed in every public area of every office of the units established by this section a notice, in clear and simple language prescribed by the Director of Social Services, that child and spousal support enforcement services are provided to all individuals whether or not they are recipients of public social services.

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

enforce" child support obligations when the child is receiving public assistance and when requested in cases where the child is not receiving public assistance. The *Worth* court concluded the duty "to enforce" child support obligations necessarily includes the duty to oppose their reduction or elimination. (*Worth* v. *Superior Court, supra,* 207 Cal.App.3d at pp. 1154-1155.) "The interest of the supported spouse or child in obtaining support is not less simply because the procedural context involves a reduction or loss of support through modification. We do not see how the Legislature could have intended to authorize the district attorney to participate in the establishment and enforcement of support orders but not in proceedings to reduce or vacate the support orders." (*Ibid.*)

Respondent has not cited *Worth* in his reply brief. Instead, respondent relies on one of the concurring opinions from *In re Marriage of Bailey* (1988) 198 Cal.App.3d 505 [243 Cal.Rptr. 776], which stated that section 11475.1 did not provide for district attorney services in child support modification proceedings except where AFDC was involved, or where there was a possibility that public assistance would be needed unless action was taken. (*Id.* at pp. 512-513.)

As the *Worth* court correctly observed, the issue of district attorney representation was not before the court in *Bailey,* concurring opinions are not binding precedent, and the position taken by the concurring opinion cited by respondent is contrary to the express language of section 11475.1. (*Worth* v. *Superior Court, supra,* 207 Cal.App.3d at p. 1153.)

The opinion in *Worth* is sound and well reasoned. Section 11475.1 authorizes the district attorney to take "appropriate action" to make sure children receive adequate support, regardless of the financial circumstances of the parents. In addition, we note that amendments to section 11475.1 enacted in 1989 have effectively codified the *Worth* court's interpretation of section 11475.1 and provide additional assistance in discerning the Legislature's original intent. (See *Steilberg* v. *Lackner* (1977) 69 Cal.App.3d 780, 787 [138 Cal.Rptr. 378].) Section 11475.1 now specifically permits the district attorney to provide representation in cases such as the instant case. (Stats. 1989, ch. 1359, § 12.5, No. 7 Deering's Adv. Legis. Service, pp. 5690-5693; see Legis. Counsel's Dig., Assem. Bill No. 1904, pp. 5658-5660.) Subdivision (f) of section 11475.1 now provides in pertinent part: "As used in this article, 'enforcing obligations' includes, but is not limited to, . . . (3) the initiation

"(b) As used in this article, 'enforcing obligations' includes, but is not limited to, (1) the use of all interception and notification systems operated by the State Department of Social Services for the purposes of aiding in the enforcement of support obligations and (2) the obtaining by the district attorney of an initial order for child support, by civil or criminal process, without regard to whether the child is receiving public assistance . . . ." (Stats. 1987, ch. 948, § 3, p. 3217.)

of a motion or order to show cause to increase an existing child support order, and the response to a motion or order to show cause brought by an obligor parent to decrease an existing child support order, . . . without regard to whether the child is receiving public assistance . . . ."

We will follow *Worth*, and that part of the trial court's order directing the recusal of the district attorney is reversed.

III. *Constitutionality of Civil Code sections 4720, subdivision (e) and 4721, subdivision (e)*

The trial court found that The Agnos Child Support Standards Act of 1984 (Civ. Code, § 4720 et seq., hereafter the Agnos Act) allows the court to consider the income of the current spouse of the noncustodial parent when determining a child support award, but prohibits the same consideration with respect to the income of the current spouse of the custodial parent. Based upon this premise, the trial court found certain provisions of the Agnos Act violated the equal protection clauses of the state and federal Constitutions.

The trial court stated: "After carefully reviewing the sections of the Civil Code in issue and the preamble to the chapter reciting legislative intent, this Court is satisfied that 4720(e) and 4721(e) are constitutionally infirm. There is no rational distinction to be drawn between incorporating the non-custodial parent's new spouse's income for the purpose of making a mandatory minimum child support award and precluding the use of the same information in terms of the custodial parent."

Appellant argues that the trial court's premise of unequal treatment was incorrect as the Agnos Act treats both parents equally with regard to consideration of the income of the current spouse, and that the provisions in question are constitutionally valid.[7] We agree with appellant that the Agnos Act treats parents equally on this point.

Civil Code section 4720 recites the legislative findings, declarations and intent for the Agnos Act. Two of the primary goals of the Agnos Act are to provide a uniform method of determining child support awards and to assure that each child receives a mandatory minimum support award. (Civ. Code, § 4720, subd. (d).) To that end, subdivision (e) of section 4720, as effective

---

[7]Respondent complains that appellant did not advance this argument below, and instead argued the unequal treatment of custodial and noncustodial parents bore a rational relationship to a legitimate state purpose. Appellant may change her theory on appeal if the issue involves solely a question of law. (*Seeley* v. *Seymour* (1987) 190 Cal.App.3d 844, 856 [237 Cal.Rptr. 282].)

when interpreted by the trial court, provided: "It is the intention of the Legislature that the courts shall adhere to the principles set forth in this chapter and shall depart from them only in exceptional circumstances. A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life. In this regard, the Legislature recognizes that a parent's circumstances and station in life are dependent upon a variety of factors, including his or her earned and unearned income; earning capacity; assets; and the income of his or her subsequent spouse or nonmarital partner, to the extent that the obligated parent's basic living expenses are met by the spouse or other person, thus increasing the parent's disposable income and therefore his or her ability to pay more than the mandatory minimum child support award established by this chapter. The court shall take into consideration the needs of the supported child or children in determining whether circumstances give rise to an increase or decrease in a child support award." (See now Civ. Code, § 4720.1, subd. (a)(2).)

Civil Code section 4721, as effective when interpreted by the trial court, explained how to determine each parent's ability to pay the mandatory minimum child support award. Subdivision (e) of that section specifically forbade consideration of the income of the current spouse of either the custodial parent or noncustodial parent for the purpose of computing the mandatory minimum support award. (See *In re Marriage of Nolte* (1987) 191 Cal.App.3d 966, 973-974 [236 Cal.Rptr. 706].) That subdivision provided: "For the purpose of determining the parent's annual gross income, in calculating the mandatory minimum child support award, the court shall not include any portion of the earned income and income derived from the separate property of the current spouse or the nonmarital partner of either parent . . . ."

■ As the income of the current spouse of neither parent was to be taken into consideration in the calculation of the mandatory minimum award, the trial court's finding that Civil Code section 4721, subdivision (e) denied equal protection of the law had no basis and was erroneous. Custodial and noncustodial parents received equal treatment under section 4721, subdivision (e), and therefore, that subdivision did not raise equal protection concerns.

■ Turning next to discretionary as opposed to mandatory child support, Civil Code section 4720, subdivision (e), as effective when interpreted by the trial court, provided that the income of the current spouse of the "obligated parent" was a factor to consider in calculating discretionary child support in excess of the mandatory minimum amount. (See *In re Marriage of Nolte, supra,* 191 Cal.App.3d at pp. 974-975.) The lead opinion in *In re*

*Marriage of Bailey, supra,* 198 Cal.App.3d 505, based upon its interpretation of the phrase "obligated parent," held that section 4720, subdivision (e) did not authorize the court to consider the income of the custodial parent's current spouse in setting child support at the discretionary level. (*Id.* at pp. 509-510.) To reach that conclusion, the opinion found: "The 'obligated' parent referred to in [Civ. Code, § 4720, subd. (e)] is the noncustodial parent from whom support is sought." (*Id.* at p. 509.) Justice Sims, in a concurring and dissenting opinion in *Bailey,* found this conclusion incorrect and reasoned that "the 'obligated parent' is any parent with a legal obligation to support the child, regardless of whether the parent has physical custody." (*Id.* at p. 514.)

A reading of the Agnos Act as a whole supports Justice Sims's belief.

"Obligate" means: "To bind (a person) by a moral or legal tie." (Oxford English Dict. (2d ed. 1989) p. 647.) Civil Code section 4720, subdivision (e) stated: "A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life." (See now Civ. Code, § 4720.1, subd. (a)(2); see also Civ. Code, § 206.)

An "obligated parent" is a parent who is legally required to support a child, and physical custody is irrelevant to that requirement. If the Legislature had meant "noncustodial parent," it would have used that wording in Civil Code section 4720, subdivision (e) instead of "obligated parent." (See former Civ. Code, § 4722, subd. (g) [the formula for calculating mandatory minimum support used the wording "noncustodial spouse"].)

Language in subdivision (e) of Civil Code section 4720 did refer to an obligated parent's "ability to pay more than the mandatory minimum child support award . . . ." Custodial parents do not pay child support awards to themselves, but as Justice Sims concluded in *Bailey,* the use of the words "to pay" in this context means to contribute to the support of the child. (*In re Marriage of Bailey, supra,* 198 Cal.App.3d at pp. 514-515.) For example, former section 4722, subdivision (b) referred to "Each parent's ability to pay a minimum mandatory amount of child support . . . ."; yet only one parent actually pays a child support award.

In their practice guide, Justice Donald B. King and Judge William P. Hogoboom also question the holding of the lead opinion in *Bailey.* "So far . . . no other reported decision adopts such a narrow interpretation . . . . Indeed, there appears to be no sound reason why, in an appropriate case, income available to offset *either* parent's basic living expenses should not be factored into the child support determination." (1 Hogoboom & King, Cal. Practice Guide (Rutter 1991), Family Law, § 6:40.29, p. 6-91, italics in original.)

Legislation should be construed so as to preserve its constitutionality and to avoid absurd results if reasonably possible. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323]; *County of Fresno* v. *Clovis Unified School Dist.* (1988) 204 Cal.App.3d 417, 426-427 [251 Cal.Rptr. 170].) We conclude subdivision (e) of Civil Code section 4720, as effective when interpreted by the trial court, allowed the court to consider the income of the current spouse of either parent, regardless of physical custody, to the extent the income from the current spouse increased the parent's disposable income. The trial court erred when it found Civil Code section 4720, subdivision (e) and section 4721, subdivision (e) unconstitutional.

Finally, it should be noted that discussion of the constitutionality of Civil Code section 4720, subdivision (e) and section 4721, subdivision (e) is somewhat academic as of this date as those subdivisions have been repealed, at least until 1993, and replaced by interim guidelines for calculating child support, found in rule 1274 of the California Rules of Court. (See Civ. Code, §§ 4720, subd. (c) and 4720.1; see also Stats. 1990, ch. 1493, §§ 9-14.) Under rule 1274 of the California Rules of Court the income of a current spouse is relevant to the calculation of child support, and with regard to that consideration, the rule makes no distinction between parents, be they obligated, custodial or noncustodial.[8] Under rule 1274 of the California Rules of Court it appears income from either parent's new spouse is a factor to be considered.

## IV. *Attorney's Fees*

Because the trial court's ruling on the recusal of the district attorney is reversed, the award of attorney's fees to respondent under the private attorney general doctrine is also reversed, as respondent is no longer a "successful party" (Civ. Code, § 1021.5).[9]

---

[8]California Rules of Court, rule 1274(e)(4) provides that one of the factors to be considered in determining a child support award is whether "A parent's subsequent spouse or nonmarital partner has income which helps meet that parent's basic living expenses, thus increasing the parent's disposable income."

[9]Code of Civil Procedure section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

The August 12, 1988, and December 20, 1988, orders of the trial court are reversed. Appellant shall recover her costs on appeal.

Newsom, Acting P. J., and Stein, J., concurred.

A petition for a rehearing was denied June 24, 1991, and respondent's petition for review by the Supreme Court was denied August 29, 1991.