[No. F006135. Fifth Dist. May 6, 1987.]

In re the Marriage of MARILYN and MICHAEL ALLEN NOLTE.
MARILYN NOLTE, Respondent, v.
MICHAEL ALLEN NOLTE, Appellant.

968

**COUNSEL**

Joel M. Basta for Appellant.

Steven W. Cobb for Respondent.

OPINION

HARRIS, J.*—Appellant Michael Nolte (husband) and respondent Marilyn (wife) were married in 1968. A child was born in 1979. A dissolution of marriage resulted in the custody of the child going to wife; husband was obligated to pay $150 a month in child support and the child's medical expenses pursuant to an agreement filed August 14, 1981.

Husband filed a motion for modification of his child support obligation on June 11, 1985. He requested that it be halved to $75 a month and that wife assume responsibility for medical expenses. On July 8, 1985, wife responded by requesting husband's obligation be raised to the "Agnos minimum," referring to the Agnos Child Support Standards Act of 1984 (Act), Civil Code section 4720 et seq.[1] The parties submitted income and expense declarations, using the forms prepared by the Judicial Council (§ 4729).

After a hearing, the court increased husband's obligation to the Agnos minimum, $288 per month at the time of the hearing, and left standing the allocation of the burden of medical expenses.

Husband filed a timely notice of appeal.

FACTS

The marriage of husband and wife which produced one child was dissolved in 1981. The parties each subsequently remarried. Their new and current spouses were themselves formerly married to each other. Husband is now married to the former Pam Neves (Pam); wife being now married to Carl Neves. Wife received physical custody of the child of the previous Nolte marriage. Pam received custody of the three children of the previous Neves marriage.

Husband, who works as a supermarket clerk, had lost his full-time job and was working part-time when he filed the motion for modification. It also appears that large anticipated medical expenses for the child loomed on the horizon. Husband's net monthly disposable income was approximately $1,600. Husband's current spouse, Pam, was a homemaker.

Wife, also a homemaker, worked briefly the year before the proceedings. She earned $181.45. Carl Neves's income for the prior year is less than clear.

---

*Assigned by the Acting Chairperson of the Judicial Council.
[1]All statutory references are to the Civil Code unless otherwise indicated.

Both parties agree Mr. Neves paid $600 a month in child support to Pam. Husband claims this came from the $2,000 a month Mr. Neves received from his farming partnership. Wife argued that Mr. Neves's income for the prior year actually totaled only $10,556.

On appeal, husband initially contends wife failed to make the requisite showing to support modification of child support. Additionally, husband claims the trial court erred in failing to attribute an "earning capacity" to the unemployed wife and in failing to consider the income of wife's current spouse. We find no basis to disturb the trial court's order and will affirm.

## DISCUSSION

### I

■ Husband first claims wife failed to make the requisite showing of need in order to support her request for modification. Husband cites no statute or case which requires the custodial parent to show greater need in order to support a request for modification. Rather, in requesting a modification of child support payments, the proponent of the request generally must demonstrate changed circumstances to support the modification. (See *Petersen* v. *Petersen* (1972) 24 Cal.App.3d 201, 206 [100 Cal.Rptr. 822]; *Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115, 119 [96 Cal.Rptr. 408].)

Here, as part of the Act, section 4730 provides: "This chapter constitutes a change in circumstances for the purpose of allowing the modification of child support orders entered prior to July 1, 1985."

The Act thus provides that its enactment was a sufficient "change in circumstances" to support a request for modification. Wife needed to show no more.

### II

■ Husband next argues that wife cannot evade her responsibilities to support the child under sections 196 and 242[2] by choosing not to be gainfully employed.

---

[2]Section 196 provides: "The father and mother of a child have an equal responsibility to support and educate their child in the manner suitable to the child's circumstances, taking into consideration the respective earnings or earning capacities of the parents."

Section 242 provides: "Every individual shall support his or her spouse and child, and shall support his or her parent when in need. The duty imposed by this section shall be subject to the provisions of Chapter 2 (commencing with Section 4720) of Title 5 of Part 5 of Division 4 and Sections 196, 206, 246, 4700, 4700.1, 4700.5, 4700.7, 4700.9, 4801, 5131, and 5132."

The thrust of husband's claim becomes apparent when the "mathematics" of the Act are understood. The minimum child support award is derived from a percentage of the combined net disposable income of the parents. The statute sets out what income must be considered and what may be deducted from that income to arrive at the net figure (§ 4721). It specifically excludes consideration of "the earned income and income derived from the separate property of the current spouse" in computing a parent's gross income (§ 4721, subd. (e)).

The annual net income of both spouses is added together and then divided by 12 to arrive at a combined monthly net disposable income. Section 4722 then requires: "(1) The combined monthly net disposable income of both parents shall be multiplied by the following percentage factors: 18 percent for one child; . . .

"(2) If the resulting amount is less than the AFDC standard for the number of children involved, the court shall find that the parents are unable to pay at the level of the children's portion of the AFDC standard and shall set a minimum award according to the actual combined net income and the percentages set forth above.

"(3) If the resulting amount is at, or greater than, the AFDC standard for the same number of children, the court shall order a minimum award that equals the AFDC standard.

". . . . . . . . . . . . . . . . . .

"(d) The amount each parent shall contribute to the mandatory minimum award shall be determined by multiplying the minimum award by the proportionate share of each parent's contribution to their combined net disposable income."

■ Thus, as here, where one spouse does not work outside the home, the other spouse bears the entire burden of paying, at least, the AFDC minimum award. This is true no matter whether the unemployed spouse is penurious or living extravagantly on the income of a subsequent spouse or nonmarital partner.

Husband attempts to portray himself living at the brink of poverty and the wife enjoying a comparatively luxurious lifestyle, revealing, he believes, gross inequities in the Act. To cure this inequity, husband argues that wife should be required to be employed, or, at least, the court should attribute "earning capacity" to the unemployed spouse.

To support his argument that wife should be required to be employed, husband states: "Incorporated in the Agnos Standards is the Burton-Miller Act commencing with Section 11200 of the Welfare and Institutions Code. Welfare and Institutions Code Section 11201 outlines definitions and exemptions for unemployed parents attempting or eligible for aid.

"Welfare and Institutions Code § 11201[, subd.](b)(2) states: 'If the parent is not ill, incapacitated, or over the age of 65, the parent shall register for employment and cooperate with the Employment Development Department, *and shall either[ ](A) be available for and seeking employment or, (b) be accepted for or participate in a training program which has been approved by the department and which is essential for future support.*' (Italics added.)"

Suffice it to note the Burton-Miller Act was not "incorporated" into the Act, though it serves as a backdrop showing the need for standardized awards (§ 4720, subd. (d)). ■ Specifically, Welfare and Institutions Code section 11201, subdivision (b)(2), is *not* mentioned in the Act nor is there any indication that the custodial spouse is required to be employed in order to receive child support payments.

As to the attribution of "earning capacity" to an unemployed or underemployed spouse, the Act permits it. In pertinent part, section 4721 states: "In determining the ability of parents to pay the mandatory minimum child support award and to calculate the actual monthly payments to be made by each parent, all of the following provisions apply:

"(a)  annual gross income of each parent shall be determined and then adjusted to obtain the annual net disposable income. To determine and apportion the mandatory minimum child support award, as defined in Section 4722, *the court shall also consider, to the extent consistent with the best interests of the child or children, the earning capacity of either or both parents.*

"
.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(3)  To the extent that income derived from paragraphs (1) and (2) is insufficient to produce a mandatory minimum child support award at the AFDC standard for the same number of children, upon the request of either party, the court may consider investment assets of either or both parties which could be liquidated. *To determine and apportion the mandatory minimum child support award at the AFDC level, the court shall also consider, to the extent consistent with the best interests of all of the children, the earning capacity of either or both parents.*" (Italics added.)

Historically, courts have based child support awards on the "earning capacity" or the "ability to earn" of a spouse only where "it appears from the record that there is a deliberate attempt on the part of the [spouse] to avoid his [or her] financial family responsibilities . . . ." (*Philbin* v. *Philbin, supra,* 19 Cal.App.3d at p. 121; see also *In re Marriage of Williams* (1984) 155 Cal.App.3d 57, 62 [202 Cal.Rptr. 10].)

The above quoted section of the Act appears to alter the historically punitive nature of such a consideration, mandating it "to the extent consistent with the best interests of the child . . . ." Indeed, consideration of earning capacity appears to be one of the very few areas in the Act where the trial court has some discretionary input in the otherwise lockstep computation and allocation of the minimum award. If the trial court below had attributed earning capacity to the wife, although the minimum award would not have changed (§ 4722, subd. (b)(3)), the husband's proportionate share of the combined net disposable income would have decreased, lowering the percentage of the minimum award he would have had to contribute. (See § 4722, subd. (d).)

Evidence Code section 664 begins: "It is presumed that official duty has been regularly performed." ■ On appeal, in the absence of evidence to the contrary, we must presume the trial court adhered to the requirements of section 4721, subdivision (a)(3), considering and rejecting imputation of an earning capacity to wife. (See *Ross* v. *Superior Court* (1977) 19 Cal.3d 899, 913 [141 Cal.Rptr. 133, 569 P.2d 727].) "Neither party requested findings of fact from the trial court. In the absence of such findings, an appellate court must presume that the facts would support the trial court's judgment." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 645 [183 Cal.Rptr. 508, 646 P.2d 179].)

■ The record here fails to demonstrate it was in the six-year-old child's best interests that earning capacity be attributed to the custodial wife, or if so, that wife had a measurable earning capacity. (*Ibid.*) On this record, we cannot say the trial court erred in failing to attribute an earning capacity to wife.

### III

■ Husband complains the trial court erred in failing to consider Mr. Neves's income.

Section 4721, subdivision (e), clearly provides: "For the purpose of determining the parent's annual gross income, in calculating the mandatory minimum child support award, the court shall not include any portion of

the earned income and income derived from the separate property of the current spouse or the nonmarital partner of either parent."

Husband cites section 4720, subdivision (e), and section 5120.150, subdivision (c), which both discuss, in seeming contradiction to the strictures of section 4721, subdivision (e), consideration of the income of a current spouse or nonmarital partner in assessing child support awards. Section 4720, subdivision (e), states: "It is the intention of the Legislature that the courts shall adhere to the principles set forth in this chapter and shall depart from them only in exceptional circumstances. A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life. In this regard, the Legislature recognizes that a parent's circumstances and station in life are dependent upon a variety of factors, including his or her earned and unearned income; earning capacity; assets; and the income of his or her subsequent spouse or nonmarital partner, to the extent that the obligated parent's basic living expenses are met by the spouse or other person, thus increasing the parent's disposable income and therefore his or her ability to pay more than the mandatory minimum child support award established by this chapter. . . ."

Section 5120.150, subdivision (c), provides: "Nothing in this section limits the matters a court may take into consideration in determining or modifying the amount of a support order, including, but not limited to, the earnings of the spouses of the parties." However, analysis of the sections shows no contradiction and supports the propriety of the trial court's ruling.

Section 4724 of the Act clarifies section 4720, subdivision (e). "Upon the request of either party, the court may award and, when appropriate, is hereby urged to award a higher amount of child support than the mandatory minimum child support award.

"(a) *In setting a higher level of child support, the court shall be guided by* the criteria set forth in applicable statutes, relevant case law, state and local child support guidelines not in conflict with the mandatory minimum award established by this chapter, and *the legislative intent that children share in their parents' standard of living as set forth in this chapter.*

"(b) The Judicial Council shall, in accord with the legislative intent set forth in subdivision (e) of Section 4720, develop schedules for discretionary child support awards above the mandatory minimum child support awards as determined pursuant to this chapter for use by those counties without child support schedules." (Italics added.) Thus, such factors as the income of a parent's subsequent spouse may be germane to the issue of an award *above* the minimum required under the Act. Indeed, section 4720, subdivi-

sion (e), discusses consideration of the income of a subsequent spouse "to the extent that the *obligated* parent's basic living expenses are met . . . increasing the parent's . . . ability to pay more than the mandatory minimum . . . ." (Italics added.)

Nor does section 5120.150 conflict with section 4721, subdivision (e). Section 5120.150 ensures that where community funds of a subsequent marriage are used to satisfy child or spousal support obligations "at a time when nonexempt separate income of the [obligated] person is available but is not applied," the community is entitled to reimbursement. (§ 5120.150, subd. (b).) Subdivision (c) of section 5120.150 clarifies, however, that such a rule does not disable the court from considering the earnings of a subsequent spouse. Subdivision (c) does not mandate such "consideration," and we must assume the Legislature intended that such consideration would be consonant with the provisions of the applicable sections in setting the award level, e.g., section 4721, subdivision (e).

Husband in his reply brief attempts to introduce additional issues. ▉ "The salutary rule is that points raised in a reply brief for the first time will not be considered unless good cause is shown for the failure to present them before." (*Balboa Ins. Co.* v. *Aguirre* (1983) 149 Cal.App.3d 1002, 1010 [197 Cal.Rptr. 250].) Husband has made no attempt to make the requisite showing of good cause and therefore we will not address his additional points.

The judgment is affirmed. Wife is awarded her costs on appeal.

Best, Acting P. J., and Ballantyne, J., concurred.