[No. B143566. Second Dist., Div. Six. Aug. 27, 2001.]

In re the Marriage of JEAN MARIE DANDONA and WILLIAM ARALUCE.
JEAN MARIE DANDONA, Appellant, v.
WILLIAM ARALUCE, Respondent.

## COUNSEL

Angle, Carlson, Goldrick & Roberts and Miles T. Goldrick for Appellant.

Vanessa Kirker for Respondent.

## OPINION

**GILBERT, P. J.**—Under Family Code section 3653 a party who makes overpayments of support may obtain reimbursement. We conclude that retroactive application of section 3653 is constitutional.[1]

Jean Marie Dandona appeals a modification order requiring her to reimburse William Araluce for child and spousal support overpayments he made to her over a 14-month period, beginning February 1, 1999.[2] We conclude that the trial court's retroactive application of section 3653 is consistent with legislative intent and does not impair Jean's contractual rights or violate her right to due process of law. The trial court did not abuse its discretion by ordering reimbursement retroactive to the filing of William's motion for modification. We affirm.

[1] All statutory references are to the Family Code.

[2] Hereafter, we refer to the parties by their first names, not from disrespect, but to avoid confusion.

## FACTS

A judgment of dissolution of marriage incorporating the marital settlement agreement ordered William to pay child and spousal support to Jean. On January 28, 1999, William filed a motion to modify child support and terminate Jean's spousal support.

Jean responded, stating her annual income was $60,294, net monthly disposable income was $4,146.50, and she had over $382,000 in financial resources. William stated his annual income was $57,882.25 and his net monthly disposable income was $3,614.52. Jean's annual salary increased to $71,472 in April 1999.

Effective January 2000, under amended section 3653, support obligors may obtain reimbursement for overpayments of support. The court granted William's motion on March 23, 2000.

The court reduced Jean's spousal support from $304 per month to zero effective February 1, 1999, and child support from $1,758 per month to $1,277 effective February 1, 1999. It found that, while William's motion was pending, he overpaid Jean $6,734 for child support and $4,256 for spousal support over a period of 14 months, including 11 months in 1999 and January through March of 2000. It ordered Jean to repay William the overpayment of $10,990.

## DISCUSSION

### I.   *Section 3653 is retroactive*

Jean contends that the trial court erred by retroactively applying section 3653, subdivision (c) to require her to reimburse William for his 1999 overpayments.

Prior to 1999 those who overpaid support could seek reimbursement retroactive to the date they filed their motion to modify the support order. (*In re Marriage of Everett* (1990) 220 Cal.App.3d 846, 852 [269 Cal.Rptr. 917].)

Effective January 1999, amended section 3653, subdivision (c) stated: "If an order decreasing or terminating a support order is entered retroactively pursuant to this section, the support obligor *shall nevertheless not be entitled to, and the support obligee shall have no obligation to repay, any amounts* previously paid by the support obligor pursuant to the prior order that are in excess of the amounts due pursuant to the retroactive order." (Stats. 1998, ch. 854, § 1, italics added.)

The Legislature again amended section 3653, subdivision (c) so that effective January 2000, it states: "If an order decreasing or terminating a support order is entered retroactively pursuant to this section, the support obligor *may be entitled to, and the support obligee may be ordered to repay . . . any amounts* previously paid by the support obligor pusuant to the prior order that are in excess of the amounts due pursuant to the retroactive order." (Italics added.)

William contends that the Legislature intended the 2000 amendment to be retroactive. ■ "[L]egislative enactments are generally presumed to operate prospectively . . . ." (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371].) This rule does not apply, however, where the Legislature intended a retroactive application. (*Ibid.*) To determine the legislative intent, we look first to the language of the statute and then to its purpose. (*Ibid.*)

■ Section 3653 does not expressly state it applies to recovery of 1999 overpayments. But the language of the section shows the Legislature intended it to be retroactive. Support obligors are to be reimbursed for "any amounts previously" overpaid under prior court orders. (§ 3653, subd. (c).) The statute permits retroactive adjustment to the date of the filing of the motion to modify. (§ 3653, subd. (a).)

The legislative history also supports a retroactive intent. Section 3653 was amended as part of the Child Support Enforcement Fairness Act of 2000. (Stats. 1999, ch. 653, § 4.) The goal of the act was to assist thousands of support obligors who, mostly by default, were paying support orders that they did not owe. (See Historical and Statutory Notes, 29D West's Ann. Fam. Code (2001 supp.) foll. § 3652, p. 106.) To provide a remedy, the Legislature, among other things, extended the time to set aside default support orders. (§ 3690, subd. (a).) It also decided to "fix" the problem created by the 1999 amendment to section 3653, subdivision (c), and "to clarify that the court has discretion" to order repayment. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1614 (1999-2000 Reg. Sess.) as amended Aug. 16, 1999, p. 9.)

Statutes should be construed consistent with the legislative goals and should not be interpreted to create rights without remedies. (*Silberman v. Swoap* (1975) 50 Cal.App.3d 568, 571 [123 Cal.Rptr. 456].) To apply the section prospectively would mean that many the Legislature wanted to help would have no remedy. The Legislature intended this section to correct both the counterproductive result of the 1999 law and to operate retroactively. (*In re Marriage of Bouquet, supra,* 16 Cal.3d at pp. 591-594; *Silberman,* at p. 571.)

## II. *The retroactive application of section 3653 was not unconstitutional*

■ But "legislative intent alone is not sufficient. Retroactive application of the section must pass constitutional muster." (*In re Marriage of Lachenmyer* (1985) 174 Cal.App.3d 558, 561 [220 Cal.Rptr. 76].) Jean contends that during 1999 she was exempt from repayment and, therefore, the court's order denies her due process and impairs her vested property rights.

The retroactive application of a law may violate due process where it interferes with a vested property interest. (*In re Marriage of Lachenmyer, supra*, 174 Cal.App.3d at pp. 563-564.) But the Legislature may constitutionally use its "police power to abrogate rights in marital property that derived from . . . unfair former law[s]." (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 594; *Addison v. Addison* (1965) 62 Cal.2d 558 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391] [new law that changed spouse's separate property acquired out of state into community property may be constitutionally applied at time of trial]; *In re Marriage of Potter* (1986) 179 Cal.App.3d 73, 80-84 [224 Cal.Rptr. 312] [retroactive application of new law which amended final dissolution judgments and redistributed military retirement benefits neither impaired contractual interests nor violated due process].)

In *In re Marriage of Bouquet*, while a dissolution action was pending, the law changed making the husband's earnings during separation his separate property. Under the former law, the wife's earnings were her separate property and the husband's were community property. Applying the new law retroactively meant the wife lost money she was entitled to under the former law. But the Supreme Court held that a retroactive application was constitutional because the Legislature acted to correct the injustice created by the former law. (*In re Marriage of Bouquet, supra*, 16 Cal.3d at p. 593.) The court, in rejecting the wife's argument that her vested property interest could not be impaired, stated, "[t]he vesting of property rights . . . does not render them immutable." (*Id.* at p. 592.) Because the wife's property interest was derived from a law that unfairly treated male spouses, it yielded to the Legislature's right to abrogate it. (*Id.* at pp. 593-594.)

In the present case, the Legislature also acted to correct an unjust law. The 1999 amendment to section 3653 deprived support obligors of a right to be reimbursed for overpayments. This permitted a windfall to the overpaid spouse and precluded the superior court from exercising its traditional equity powers to adjust for overpayments in family law cases. (*In re Marriage of Peet* (1978) 84 Cal.App.3d 974, 980 [149 Cal.Rptr. 108].) It was both a drastic departure from the former provision and it conflicted with the common law protection against unjust enrichment. (*Dunkin v. Boskey* (2000)

82 Cal.App.4th 171, 195 [98 Cal.Rptr.2d 44]; *In re Marriage of Everett, supra,* 220 Cal.App.3d at p. 852.) By abrogating the 1999 amendment, the Legislature restored fairness and eliminated the windfall that conflicted with state public policy. (*Dunkin, supra,* at p. 195.)

Jean argues that applying the new law impairs her interest to be free from reimbursement claims. But her interest, like the one in *In re Marriage of Bouquet,* was derived from a law that the Legislature repealed because it was unfair. Jean contends that it takes her property and imposes hardship because she spent the support money. But section 3653 did not automatically require Jean to return overpaid sums to William. It only restored the trial court's discretion to decide whether it was reasonable to reimburse him. (§ 3653, subd. (c)(3).) The new law affords her the opportunity to show why William should not be reimbursed because of hardship or any other reason. (§ 3653, subd. (c)(1)-(4).) The retroactive application of section 3653 did not violate Jean's constitutional rights. (*In re Marriage of Bouquet, supra,* 16 Cal.3d at pp. 592-593.)

### III. *The trial court did not abuse its discretion in making the award*

■ Jean contends that the trial court did not consider all the factors required by section 3653. Subdivision (c)(1) through (4) of the section requires the court to consider the amount to be repaid, the duration of the overpayment, the impact on the obligee and "other facts or circumstances that the court deems relevant." The court reviewed the income, expenses and assets of Jean and William and found that Jean was overpaid $10,990 for 14 months. It found that Jean's financial condition was good, and considered her ability to pay future expenses. Jean has not shown that the court did not consider the relevant factors.

Jean contends the court abused its discretion by ordering reimbursement retroactive to February 1, 1999, because it caused a hardship and she was not employed full time until April 12, 1999. We do not reweigh the evidence or reconsider credibility determinations. (*Leff v. Gunter* (1983) 33 Cal.3d 508, 518 [189 Cal.Rptr. 377, 658 P.2d 740].) "[A] reviewing court, should not disturb the exercise of a trial court's discretion unless it appears that there has been a miscarriage of justice." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].)

In February of 1999 Jean's annual income was $60,294 and her net monthly disposable income was $4,146.50. Her annual and net monthly disposable income was greater than William's. She had over $382,000 in financial resources. In April 1999 her annual salary increased to $71,472.

She contends that she spent all the support money. But due to the size of her income and resources in February, the trial court could reasonably infer that her financial condition was strong and repayment was both fair and not a hardship. Jean has not shown that the court abused its discretion.

The order is affirmed. Costs are awarded to respondent.

Yegan, J., and Coffee, J., concurred.