Filed 8/20/24  Marriage of R.B. and N.B. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of R.B. and N.B. | D081727 |
| R.B., | |
| Respondent, | (Super. Ct. No. 17FL002207N) |
| v. | |
| N.B., | |
| Appellant, | |
| COUNTY OF SAN DIEGO, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Deborah A. Cumba, Commissioner.  Reversed and remanded.

Niddrie Addams Fuller Singh and Victoria E. Fuller for Appellant.

Moshtael Family Law and Daniel R. Knowlton for Respondent R.B.

Rob Bonta, Attorney General, Cheryl L. Feiner, Senior Assistant Attorney General, Maureen C. Onyeagbako, Supervising Deputy Attorney

General and Grant Lien, Deputy Attorney General for Respondent San Diego County Department of Child Support Services.

Appellant N.B. (Mother) appeals a family court order denying her request for an order to modify child support, contending the court abused its discretion by concluding insufficient time had elapsed between the original judgment of dissolution and her instant request, and by finding the increased income of R.B. (Father) was not a material change in circumstances warranting a modification. Respondent San Diego County Department of Child Support Services (the County) makes the same arguments. We reverse the order and remand with directions set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2021, the family court entered a judgment dissolving the parties' marriage. It made a finding that Father's income as a wealth management advisor is subject to "fluctuation and the up market which significantly affects his earnings," and concluded it was "appropriate to use an average of [three to five] years when looking at [his employment] income." The court found Father's monthly income was $44,624, and ordered him to pay Mother $4,829 monthly to support their two children.

The family court denied Mother's request for any share of Father's bonus income under *In re Marriage of Ostler-Smith* (1990) 223 Cal.App.3d 33, finding that "the historical financial data and the current employment evidence allowed [it] to determine and weigh the factors set forth in . . . [s]ection 4320 in setting permanent spousal support."

The court specifically found that under written agreements between Father and his employer, he received "up front" bonuses structured as tax-deferred "loans" designed to create an incentive for him to continue his

2

employment: "The court also accepts that the principal balance of the tax deferred bonuses in the form of loan repayment at the date of separation is $2,033,529. This is a community obligation. As of the date of separation the community had received all of the funds (Loans) . . . . The conditions for such loans are subject to the expectancy of ongoing employment as set forth in the [e]mployment and transition agreements. The expectancy for [Father] is through March 2022 to absolve the community of the liabilities of the 'loans' received prior to separation." (Bolding omitted.) The parties did not appeal this order.

In February 2022, the court denied Mother's first request for an order modifying child support, and sanctioned her under Family Code[1] section 271.

In July 2022, Mother filed the present request for an order modifying child support for her daughters, then aged 16 and 13. She submitted into evidence Father's W-2 tax statement for 2021, showing "wages, tips, other compensation" of $1,168,675.98. She stated in a declaration that Father's tax documents showed that since entry of the judgment of dissolution, his 2021 income had increased and "averages out to $99,149 per month which is over twice as much as the amount of income upon which the current order is based." (Underlining omitted.)

In opposing Mother's request, Father submitted into evidence a "Schedule C Earnings Summary" from his employer, a financial services firm, which listed his 2021 net monthly compensation as $108,828.57. A December 2022 employer financial statement listed his gross annual income as $836,927.23, and his net monthly compensation as $45,977.54. He stated in a declaration, "As [Mother] knows, and as the court has found, my wages contain 'phantom income,' which artificially inflates the appearance of my

_____

[1]    Undesignated statutory references are to the Family Code.

3

earnings on paper. This 'phantom income' is *money that I do not receive* because the community already received this money during the marriage many years ago as part of my initial signing with [my employer]. The community received this money, and the court found that the repayment of these loans . . . is a community obligation, and the court assigned that obligation to me as a result of the trial." (Bolding omitted.)

Father further argued, "Part and parcel with *why* the court ordered a three[-]year average is that we have been in a bull market for the last five years up until the beginning of this year. A big portion of my business is fee-based, and the other remaining portion is options trading. Options trading, and as is commonplace knowledge, is very bullish-type activity. However, with inflation now being a long-term trend, that trend does not convert easily because we would literally have to physically take paper dollars out of the economy to shield my work from being negatively impacted—this means that a multiple year decrease of my income is absolutely expected."

Father added: "I have only been able to keep afloat in the past several years by deferring my tax payments each month beyond the base rate, owing great debt later. My firm across-the-board for every employee only takes 22 [percent] out [for] [f]ederal taxes and [eight percent] for state taxes. I have increased that now to a combined rate of 47 [percent]."

In her reply declaration, Mother stated that "all community loans" stemming from the bonuses Father received before the date of separation were paid off as of May 2022, therefore any loan repayments on his paystubs were large bonuses he received post-separation, and for his exclusive benefit: "This is money actually paid to [him] and must be counted as income available for support."

4

At the January 2023, hearing on this matter, the trial court asked Mother's attorney to answer this "threshold" question in light of the parties' filings: "[W]hat is the material change in circumstance, what's different from what was presented [earlier]"? Mother's attorney explained that, at the time of the hearing, the evidence reflected a year and a half of Father's income since entry of judgment. He explained that even accepting the figures in Father's earnings statements and deductions from his income, Father still earned an average monthly income of more than $64,000 in 2021 and 2022.

Father's attorney responded to the same question by stating that in 2022, based on Father's income and expense declaration, his average monthly income was unchanged at approximately $45,000.

The family court ruled from the bench that no material change of circumstances had occurred warranting modification of child support, and the representative three-year sample of income remained a reasonable basis for determining Father's monthly average income: "[G]iven that judgment occurred in July 2021 and there was a motion for modification heard in February 2022 and given we are in January 2023, . . . not enough time has passed for that three-year representative sample to have changed substantially." It entered a minute order accordingly.[2]

---

[2] The court ruled: "[T]he modification of spousal support is not properly at issue before this court. For example, the spousal support boxes are not checked in Father's request for order and Father did not file a [family law] 157 form setting forth current information regarding the . . . section 4320 factors. Even though spousal support is not at issue, the court reiterated the *Gavron* [*In re Marriage of Gavron* (1988) 203 Cal.App.3d 705] warning to Mother." (Some capitalization omitted.) Mother does not challenge these portions of the court's ruling.

DISCUSSION

Mother and the County argue the court abused its discretion by concluding insufficient time had passed since the calculation of Father's income in the judgment of dissolution to warrant a finding of changed circumstances in order to modify child support.

Child support awards in California are governed by a statewide uniform child support guideline with the priority of protecting the best interests of children. (§ 4053, subd. (e); *In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 528 (*Macilwaine*); *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283.) "The court shall adhere to the statewide uniform guideline and may depart from the guideline only in the special circumstances" identified in the statute. (§ 4052.) The guideline amount is determined by a mathematical formula based on each parent's net monthly disposable income. (§ 4055; see also *Macilwaine, supra*, 26 Cal.App.5th at p. 528.) "The amount generated by the formula 'is intended to be presumptively correct in all cases, and only under special circumstances should child support orders fall below the child support mandated by the guideline formula.' (§ 4053, subd. (k); see § 4057, subd. (a).) The presumption 'affect[s] the burden of proof' and may be rebutted with evidence" that application of the formula would be unjust or inappropriate in the particular case. (*In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 527 (*Hein*); see also § 4057, subd. (b).)

In awarding support, courts are required to adhere to statutory principles: " ' " 'A parent's first and principal obligation is to support the parent's minor children according to the parent's circumstances and station in life.' " (§ 4053, subd. (a).) "Each parent should pay for the support of the children according to the parent's ability." (§ 4053, subd. (d).) "Children

6

should share in the standard of living of both parents.  Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children." (§ 4053, subd. (f).)' " (*Macilwaine, supra,* 26 Cal.App.5th at p. 528.)

Subject to certain exceptions, child support orders are modifiable "at any time as the court determines to be necessary." (§ 3651, subds. (a), (e); *Marriage of Bodo* (2011) 198 Cal.App.4th 373, 386.)  The party seeking to modify a child support order must show there has been a material change in circumstances since entry of the last support order.  (*Hein, supra,* 52 Cal.App.5th at p. 528.)  In determining whether a material change has occurred, the first step often involves applying the statewide uniform guideline to the parent's current financial circumstances.  [Citation.]  "Thus, an increase or decrease in either parent's income available for child support will affect the guideline amount of child support and, thus, may constitute a material change in circumstances justifying a modification of child support." (*Hein, supra,* 52 Cal.App.5th at pp. 528-529.)

We review a trial court's determination to grant or deny a request for modification of a child support order for an abuse of discretion.  (*Macilwaine, supra,* 26 Cal.App.5th at p. 527; *In re Marriage of Cheriton, supra,* 92 Cal.App.4th at pp. 282-283.)  Under this standard, we consider only " 'whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion.' " (*Macilwaine, supra,* 26 Cal.App.5th at p. 527.)  "We do not substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order." (*Ibid.*)  The trial court's discretion must be exercised within the limits of the child support statutes, but we uphold "the exercise of discretion as

7

broadly as possible under the statute." (*In re Marriage of Fini* (1994) 26 Cal.App.4th 1033, 1043-1044.)

"To the extent [appellant] challenges the trial court's factual findings, our review follows established principles concerning the existence of substantial evidence in support of the findings. On review for substantial evidence, we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference." (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 34.) "We do not reweigh the evidence or reconsider credibility determinations." (*In re Marriage of Dandona & Araluce* (2001) 91 Cal.App.4th 1120, 1126.)

*In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, a case involving a father who was a "commissioned financial advisor for a major investment firm" (*id.* at p. 1077) is instructive. There, the father earned commissions and his income fluctuated monthly. (*Id.* at p. 1078.) The court held that "the time period on which income is calculated must be long enough to be *representative,* as distinct from *extraordinary*." (*Id.* at p. 1082.) It explained, "as regard[ing] support, we may say that statutes appear to create a presumption that the most recent 12 months is certainly *an* appropriate period in most cases." (*Id.* at p. 1083.) The court added, "The theory is that the court is trying to predict likely income for the immediate future, as distinct from extraordinarily high or low income in the past." (*Ibid.*)

Here, the court did not articulate a reason for choosing a three-year period as the basis for calculating Father's income. To the extent it relied on the dissolution judgment, which had used a three-year period, that reliance is misplaced because that judgment did not compel the use of the same standard in the context of a motion to modify the support order. We conclude

8

there are sound reasons why the court should not have departed from using "a properly representative sample, which, on this record, would presumptively have been the previous 12 months." (*In re Marriage of Riddle, supra,* 125 Cal.App.4th at p. 1077.) As stated, the parties' two daughters were 16 and 13 years respectively. By using a three-year period for calculating Father's income, the court overlooked the fact that the daughters would be deprived of the benefit of Father's income increase. This violates the principles supporting the statewide uniform guidelines for child support orders. (See § 4053, subd. (f) ["Children should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children"].) Moreover, as set forth above, Father submitted documents showing his income increased significantly in 2021 and 2022. Specifically, his monthly income as stated in the judgment of dissolution was $44,624, but for 2021, his W-2 tax statement showed his monthly "wages, tips, other compensation" had more than doubled to $108,828.57. "A parent's gross income, as stated under penalty of perjury on recent tax returns, should be presumptively correct." (*In re Marriage of Loh* (2001) 93 Cal.App.4th 325, 332; accord, *In re Marriage of Riddle,* at p. 1081) Based on the above, we conclude the court abused its discretion in using a three-year period to calculate Father's income and in concluding that Father's increased income did not constitute a material change in circumstances.

## DISPOSITION

The order denying Mother's request for modification of child support is reversed, and the court directed to conduct new proceedings on Mother's request for modification of child support consistent with this opinion.  Mother is awarded costs on appeal.

O'ROURKE, Acting P. J.

WE CONCUR:

DO, J.

RUBIN, J.